UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Anthony McFarlane-Hammond,

       Plaintiff,

   v.

Premium Capital Funding, LLC (d/b/a
TopDot Mortgage), LoanCare Servicing
Center, Inc., FNF Servicing, Inc., and
John and Jane Does 1-10,

       Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 11-cv-01927 ADM/JSM

_____

James L. Gunn IV, Esq., Gunn Legal Services, LLC, Woodbury, MN, on behalf of Plaintiff.

Kevin T. Dobie, Esq., Usset, Weingarden & Liebo, PLLP, Minneapolis, MN, on behalf of Defendants LoanCare Servicing Center, Inc. and FNF Servicing, Inc.

_____

## I. INTRODUCTION

The undersigned United States District Judge heard oral argument on Defendants LoanCare Servicing Center, Inc.'s and FNF Servicing, Inc.'s (together, "Defendants") Motion for Summary Judgment [Docket No. 19] on November 1, 2012.[1] In his Complaint, Plaintiff Anthony McFarlane-Hammond alleges: (1) a failure to rescind his mortgage refinancing transaction as required by the Truth in Lending Act (TILA) and Regulation Z; (2) entitlement to a declaratory judgment voiding Defendants' security lien on Plaintiff's property; and (3) a violation of Minn. Stat. § 58.137, which governs lender fees in residential mortgage transactions. [Docket No. 1]. For the reasons stated herein, Defendants' motion is granted.

---

[1] Plaintiff named FNF Servicing, Inc. as a defendant only because FNF owns LoanCare. Compl. ¶ 7.

## II. BACKGROUND

In July 2009, Plaintiff sought refinancing for his home mortgage loan from Defendant Premium Capital Funding, LLC ("TopDot"). Christopher Kalla Aff. [Docket No. 21] Ex. F at 7 (foreclosure notices and affidavit of service). Although Plaintiff offers conflicting statements about where the closing took place, the parties agree that on September 4, 2009, Plaintiff executed a mortgage note for $171,512 to refinance his previous home loan from Bank of America. Compl. ¶ 17, Ex. 1; Pl.'s Mem. Opp'n Summ. J. [Docket No. 26] ("Pl.'s Opp'n") 2; Kalla Aff. Ex. E. Mortgage Electronic Registration Systems, Inc. ("MERS") served as the mortgagee, and LoanCare, the moving party, was the mortgage servicer. Kalla Aff. Ex. F at 7.

At the closing, Plaintiff signed various documents, including a Department of Housing and Urban Development Settlement Statement (commonly known as a "HUD-1"), HUD-1 addenda, a notice of right to cancel disclosure form, and a Truth in Lending disclosure statement. Compl. ¶ 19, Ex. 1. TopDot did not provide Plaintiff with copies of his notice of right to cancel form or his Truth in Lending disclosure at the closing itself. Instead, TopDot mailed a packet of documents to Plaintiff approximately one week later.[2] Id. ¶ 19. The packet included:

(1) Plaintiff's mortgage note;

(2) Plaintiff's mortgage security instrument;

(3) a HUD-1 imprinted with "HUD FAILED QC" and "DO NOT CLOSE";

(4) Plaintiff's signed HUD-1, with an additional copy that does not include Plaintiff's signature but states identical terms;

---

[2] Neither the Complaint nor the parties' summary judgment memoranda indicate the exact date on which TopDot mailed the listed documents.

> (5) signed HUD-1 addenda;
>
> (6) two signed copies of Plaintiff's notice of right to cancel disclosure;
>
> (7) a Truth In Lending disclosure signed by Plaintiff; and
>
> (8) an unsigned Truth in Lending disclosure containing somewhat different terms than the signed disclosure.

Id. at Ex. 1.

Plaintiff defaulted on his loan by December 2010. See Kalla Aff. Ex. F at 10. In March 2011, Plaintiff sent a letter to TopDot in which he stated TopDot had failed to provide proper disclosures as required by TILA. Compl. Ex. 2. As a result of these claimed violations, Plaintiff sought rescission of the entire loan transaction. Id. Sometime thereafter, TopDot, through MERS, assigned its interest in Plaintiff's property to LoanCare. Kalla Aff. Ex. F at 1. In May 2011, LoanCare initiated foreclosure proceedings against Plaintiff. Id. at 8-9.

On July 15, 2011, Plaintiff filed a verified complaint against Defendants, TopDot, and John and Jane Does 1-10.[3] Plaintiff did not serve TopDot in this action, and TopDot did not respond to the Complaint. In addition, Plaintiff alleged John and Jane Does 1-10 were "involved in the instant case and transaction" and would be identified upon the completion of further discovery, but Plaintiff did not identify or serve these persons. See Compl. ¶ 8. On September 1, 2012, the remaining Defendants brought the present motion for summary judgment, seeking dismissal of the Complaint.

---

[3] A verified complaint is equivalent to an affidavit for purposes of summary judgment. Davis v. Jefferson Hosp. Ass'n, 685 F.3d 675, 682 (8th Cir. 2012) (citation omitted).

## III. DISCUSSION

**A. Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

The United States Supreme Court, in construing Federal Rule 56(c), stated in <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986):

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. <u>Ludwig v. Anderson</u>, 54 F.3d 465, 470 (8th Cir. 1995). If evidence sufficient to permit a reasonable jury to return a verdict in favor of the nonmoving party has been presented, summary judgment is inappropriate. <u>Krenik v. Cnty of Le Sueur</u>, 47 F.3d 953, 957 (8th Cir. 1995). However, the nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." <u>Id.</u> As a result, the "mere existence" of an alleged factual dispute will not defeat a properly supported motion for summary judgment . . . ." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Instead, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Id.</u>

**B. Plaintiffs' Truth In Lending Act Claims**

TILA requires creditors to disclose certain credit terms in a "clear and conspicuous" manner before the completion of a consumer credit transaction. See, e.g., 15 U.S.C. § 1635(a). If a creditor fails to do so, the consumer may seek statutory damages. In addition, depending on the nature of the alleged violations, the consumer may also seek rescission of the entire transaction. In this case, Plaintiff focuses his TILA claims solely on the remedy of rescission, and damages from Defendants' failure to honor Plaintiff's request for rescission.

**1. Assignee Liability**

Defendants argue that they are not liable for rescission because the disclosure defects in this case are "hidden violations" of TILA. TopDot, the originator of Plaintiff's mortgage, had responsibility as creditor to provide Plaintiff with the required TILA disclosures.[4] TILA also attaches liability for these disclosures to LoanCare as the assignee of the mortgage. However, TILA places certain limits on the liability allowed against assignees for disclosure defects. 15 U.S.C. § 1641(a) states that a consumer may seek liability against an assignee for a disclosure violation only if the violation is "apparent on the face of the disclosure statement . . . ." As a result, a plaintiff may not seek TILA statutory damages against an assignee for "hidden" disclosure violations. Apart from statutory damages, however, § 1641(c), titled "Right of rescission by consumer unaffected," states that "[a]ny consumer who has the right to rescind under section 1635 of this title may rescind the transaction as against any assignee of the obligation."

Courts have disagreed whether an assignee is liable for rescission when a disclosure

---

[4] At oral argument, Defendants conceded TopDot was not a necessary party to this action.

defect is not "apparent on the face" of the disclosure.  See, e.g., Iroanyah v. Bank of Am., N.A., 851 F. Supp. 2d 1115, 1129-30 (N.D. Ill. 2012) (noting division within Northern District of Illinois regarding assignee liability for rescission based on facial defects).  This Court previously held that consumers entitled to seek rescission under § 1635 may do so against assignees regardless of whether a disclosure defect is facially apparent.  Peterson-Price v. U.S. Bank, Nat'l Ass'n, No. 09-495, 2010 WL 1782188, at *3 (D. Minn. May 4, 2010).  Defendants attempt to distinguish Plaintiff's claims from the Peterson-Price holding, but do so using questionable logic.  See Defs.' Mem. Reply Supp. Summ. J. [Docket No. 27] ("Defs.' Reply") 13.  However, it is ultimately unnecessary to revisit the issue in this case.  As demonstrated below, Plaintiff's claims fail as a matter of law.

### 2. Notice Of Right To Cancel Disclosures

Section 1635 allows consumers to rescind certain credit transactions, including mortgages secured by primary dwellings.  Under the statute, creditors must "clearly and conspicuously" disclose this right of rescission and provide the forms necessary for the consumer to exercise the right.  15 U.S.C. § 1635(a).  To implement TILA, the Federal Reserve Board promulgated a set of administrative rules referred to as Regulation Z.  Regulation Z specifies that the creditor must provide two copies of the consumer's notice of the right to rescind (also referred to as the "notice of right to cancel").  12 C.F.R. § 226.23(b)(1).  The notice must provide certain information, including the date the rescission period expires.  Id. Regulation Z also provides a model form that creditors may use in notifying consumers of their right to rescind.  Id. § 226, Appx. H.  Form H-8 states in relevant part:

> You are entering into a transaction that will result in a [mortgage/lien/security interest] [on/in] your home. You have a legal right under federal law to cancel this transaction,

without cost, within three business days from whichever of the following events occurs last:

> (1) the date of the transaction, which is _____; or
> (2) the date you received your Truth in Lending disclosures; or
> (3) the date you received this notice of your right to cancel.

Id. The form further states: "If you cancel by mail or telegram, you must send the notice no later than midnight of (date) (or midnight of the third business day following the latest of the three events listed above)." Id. It also details the rescission process and the consumer's rights under TILA. See id.

As the form indicates, the consumer may rescind a credit transaction up to three days after the latest of the three events listed above occurs. Id., see also id. §226.23(a)(3). If the creditor fails to deliver the proper disclosures altogether, then the consumer may rescind the transaction up to three years after its consummation. Id.

Plaintiff argues TopDot's notice of right to cancel violates § 1635(a) in two ways. First, Plaintiff argues that TopDot violated TILA because it did not provide the notice of right to cancel before the mortgage refinancing closed, but instead mailed the notices a week later. In support of this argument, Plaintiff cites § 1638(b), which requires creditors to provide disclosures about the terms of the credit agreement before the extension of credit. Second, Plaintiff refers to a portion of TopDot's notice of right to cancel, which states: "you must send the notice [of right to cancel] no later than midnight of SEPTEMBER 9, 2009 (or midnight of the third business day following the latest of the three events listed above)." Plaintiff argues this language is "inherently confusing" because Plaintiff received this letter after September 9, 2009. Defendants respond that TopDot provided proper notices of the right to rescind, and that § 1635 specifically contemplates allowing creditors to mail these notices after a credit transaction

closes.

Addressing Plaintiff's first argument, TopDot's mailing of the notices of the right to cancel did not violate § 1635 or Regulation Z. Plaintiff correctly notes that § 1638 states creditors shall disclose various specific aspects of a proposed credit transaction, such as the annual percentage rate (APR), before the actual extension of credit. But § 1635, which authorizes Plaintiff's rescission claims, does not impose this timing requirement. Instead, § 1635 specifically contemplates situations in which a creditor provides notice of the right to cancel after the consummation of the credit transaction. See Simmons v. Mortg. Elec. Registration Sys., No. 09-162, 2010 WL 428784, at *3 (D. Minn. Feb. 2, 2010) ("Thus, TILA contemplates delivery of the required disclosures and forms at a time other than the consummation of the transaction."). The statute protects a consumer's right to rescind by allowing the consumer to rescind after the completion of the transaction or the delivery of the proper disclosures, necessarily implying that the disclosures may be delivered after the transaction is completed. Regulation Z and the model forms further support this interpretation. 12 C.F.R. §§ 226.23(a)(3), Appx. H. As a result, when a lender delays providing the required disclosures, the consumer's right to rescind the credit transaction simply continues until three days after he or she actually receives the disclosures.

In this case, TopDot satisfied TILA's rescission notice requirements. TopDot's "Notice of Right to Cancel" forms match the model Regulation Z form exactly, except that TopDot completed the necessary details such as names and dates. Compare Compl. Ex. 1 at 18-19 with 12 C.F.R. § 226, Appx. H, Form H-8. Plaintiff admits in the Complaint that he signed the notice, and that he received two copies of the notice about one week later. Compl. ¶ 19. TopDot's

delay in sending the notice of right to cancel did not violate § 1635; it extended the window in which Plaintiff could rescind his refinance transaction.

Addressing Plaintiff's second argument, the language of TopDot's notice of right to cancel is not inherently confusing. The notice states ". . . [Y]ou must send notice no later than midnight of SEPTEMBER 9, 2009 (or midnight of the third business day following the latest events listed above)." This language—the same language suggested by Regulation Z—must be read objectively to determine whether it stated Plaintiff's rescission rights "clearly and conspicuously." Peterson-Price, 2010 WL 1782188, at *4-6 (adopting standard by which courts view alleged violations of "clear and conspicuous requirement under standard of "objective reasonableness"); see also Simmons, 2010 WL 428784, at *5; Brown v. Wells Fargo & Co., 284 F.R.D. 432, 442 (D. Minn. 2012). Viewed objectively, Plaintiff's receipt of the notice of right to cancel after September 9, 2009, did not create a contradiction or potential for confusion. The parenthetical in the very same sentence makes clear that Plaintiff had the alternate rescission deadline of three business days from his receipt of the disclosures. As a result, Plaintiff's claims regarding TopDot's notice of the right to cancel fail as a matter of law.

### 3. Failure To Make Material Disclosures

In addition to notice of right to cancel, § 1635(a) requires creditors to provide certain "material" disclosures to consumers in a clear and conspicuous manner. Regulation Z states that the following disclosures are "material" for purposes of a consumer's right to rescind: "the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule, and the disclosures and limitations referred to in §§ 226.32(c) and (d) and

9

226.35(b)(2).'"[5] 12 C.F.R. § 226.23(a)(3). As with notice of the right to cancel, a delay in providing these "material" disclosures will extend the time within which a consumer may rescind. 15 U.S.C. § 1635(a), (f). Similarly, a complete failure to provide the disclosures will allow a consumer to rescind the credit transaction up to three years after the transaction's consummation. Id.; 12 C.F.R. § 226.23(a)(3).

The majority of courts have held that TILA does not require "perfect" or "punctilious" compliance to satisfy the "clear and conspicuous" disclosure requirement. See Watkins v. SunTrust Mortg., Inc., 663 F.3d 232, 239-40 (4th Cir. 2011) (collecting cases). The documents provided at closing will satisfy TILA if, when read together as a whole, they would not confuse the average consumer. Peterson-Price, 2010 WL 1782188, at *4 (citations omitted).

As discussed above, Plaintiff received both his signed Truth in Lending disclosure as well as an unsigned Truth in Lending disclosure. The unsigned disclosure discloses several terms, including:

(1) an APR of 7.057%;

(2) a finance charge of $219,396.52;

(3) an amount financed of $160,339.65;

(4) payments totaling $379,738.17; and

(5) a 5% charge for late payments.

In comparison, the signed disclosure states:

(1) an APR of 7.043%;

---

[5] 12 C.F.R. §§ 226.32(c), (d) and 226.35(b)(2) refer to certain limitations and necessary disclosures for mortgage transactions, including a requirement that the creditor disclose the total amount borrowed in a mortgage refinancing. See id. § 226.32(c)(5)

> (2) a finance charge of $219,169.49;
>
> (3) an amount financed of $160,568.68;
>
> (4) payments totaling $379,738.17; and
>
> (5) a 4% charge for late payments.

Compl. Ex. 1 at 20-21. Both disclosures also contain an identical schedule of payments extending until 2039. And where the signed disclosure includes terms completed by the marking of a checkbox, the unsigned disclosure has several incomplete terms.

In his Complaint, Plaintiff alleges that receiving two "different and conflicting" Truth in Lending disclosures creates an "inherent ambiguity" in violation of TILA and Regulation Z. Compl. ¶¶ 24-26, 33. In addition, Plaintiff argues TopDot violated Regulation Z by failing to provide the required disclosures "in a form that the consumer may keep." Pl.'s Opp'n at 8. Defendants respond that Plaintiff signed a Truth in Lending disclosure, creating conclusive proof that Plaintiff received the material disclosures in a timely manner. Defendants also argue that Plaintiff has not disputed the accuracy of his signed Truth in Lending disclosure.

Receiving two somewhat inconsistent Truth in Lending disclosures at the same time has the potential to create impermissible ambiguity as to the terms of a loan. See, e.g., Peterson-Price, 2010 WL 1782188, at *4-6; see also Trombley v. SunTrust Mortg., Inc., No. 10-3089, 2012 WL 3029645, at *5 (D. Minn. July 24, 2012). In Peterson-Price, the plaintiff received three Truth in Lending disclosures, two of which she signed and each of which bore different dates and different APRs. Peterson-Price, 2010 WL 1782188, at *4. One of the disclosures also stated a variable APR while the other two disclosed fixed rates. Id. In Trombley, the plaintiff received two Truth in Lending disclosures that also stated conflicting APRs. Trombley, 2012

WL 3029645, at *2. The first, unsigned disclosure stated a lower APR than the final, accurate disclosure. Id.

In both cases, the court held a reasonable factfinder might or might not conclude that plaintiff's Truth in Lending disclosures would have confused the average consumer. Significantly, in both cases the final Truth in Lending disclosure form included an unfavorable adjustment to the consumer's APR.

Unlike in Peterson-Price, Plaintiff's disclosures state nearly-identical loan terms. Both disclosures state the "total of payments" as $379,738.17, and both include identical schedules of payment through 2039.[6] And unlike the facts in Trombley, the signed disclosure in this case states loan terms more favorable than those in the unsigned disclosure, precluding the possibility of a "bait-and-switch." In addition, the unsigned disclosure is facially incomplete and undated, and none of the other documents Plaintiff received from TopDot contradict Plaintiff's actual loan terms.[7] Given these specific circumstances, it is clear that the signed disclosure states the final terms of Plaintiff's loan, and the incomplete, unsigned disclosure does not have the potential to confuse an average consumer.

Plaintiff's argument that he did not receive the disclosures in a form he could keep is also unavailing. Regulation Z does require lenders to make the required disclosures "in a form that the consumer may keep." 12 C.F.R. § 226.17(a). But as discussed above, mailing the

---

[6] Combining the "finance charge" and the "amount financed" results in the "total of payments."

[7] Although Plaintiff received an incomplete HUD-1 with "DO NOT CLOSE" imprinted on it, he also received a copy of his signed HUD-1 statement, the accuracy of which he does not dispute. Plaintiff offers no allegations or argument regarding how the incomplete HUD-1 might have led to the alleged violations of § 1635.

disclosures required by § 1635 satisfies the requirements of that section, and Plaintiff admits that he received and kept these disclosures. Compl. ¶ 20; see Simmons, 2010 WL 428784, at *3. Because Plaintiff has not demonstrated the existence of a genuine issue of material fact with regard to the disclosures at issue, Count 2 of the Complaint is dismissed.

### 4. Failure To Rescind And Other TILA Damages

Because the Court holds that TopDot satisfied the disclosure requirements of § 1635, Plaintiff had three days after he received his mailed disclosures within which to rescind his transaction. Plaintiff did not seek rescission until March 2011, well after his time for rescission expired. As a result, Count 1 of the Complaint, alleging damages for a failure to rescind, is dismissed.

In his prayer for relief, Plaintiff also appears to seek statutory damages for TILA disclosure violations. Compl. at 14. As Defendants correctly argue, the statute of limitations for damages under 15 U.S.C. § 1640 is one year after the violation occurs. Id. § 1640(e). Because the disclosures at issue occurred in September 2009, Plaintiff has not timely brought any claims under § 1640. All alleged claims for TILA statutory damages are dismissed.

### 5. Ability To Tender

It is not necessary to reach the question of whether Plaintiff's ability to tender is relevant in a claim for rescission under § 1635 because the Court grants summary judgment in favor of Defendants.

## C. Minn. Stat. § 58.137

At oral argument, Plaintiff conceded that Minn. Stat. § 58.137 did not apply in this action. As a result, Count 3 of the Complaint is dismissed.

### D. Other Claims

In his brief, Plaintiff summarily argues that he should be entitled to plead additional theories of recovery, including under the Home Ownership Equity Protection Act and common law causes of action for tortious actions, unjust enrichment, fraud, and promissory estoppel. Pl.'s Opp'n at 13. Although courts allow a liberal pleading standard for civil complaints, this standard "does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage." Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1314-15 (8th Cir. 2004). And, "a plaintiff may not amend her complaint through argument in a brief opposing summary judgment." Id. (citation omitted). As a result, any additional claims stated in Plaintiff's memorandum are not properly raised and will not be addressed here.

### IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants LoanCare Servicing, Inc.'s and FNF Servicing, Inc.'s Motion for Summary Judgment [Docket No. 19] is **GRANTED**. All claims in the Complaint [Docket No. 1] are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: December 21, 2012.